## POULAN v. GALLAGHER. *
### No. 4449.

Court of Appeal of Louisiana. Second Circuit.
April 28, 1933.

Theus, Grisham, Davis & Leigh, of Monroe, for appellant.

W. A. Walker, Jr., of Monroe, for appellee.

MILLS, Judge.

In the city of Monroe Sixth street runs north and south and Glenmar street east and west. Sixth street is a limited right of way street. According to section 32 of the city traffic ordinance this means that vehicles traveling on it have the right of way over those traveling on intersecting streets. Cars crossing or turning into a limited right of way street are not required to stop unless it is necessary in order to yield the right of way.

At about 9 o'clock in the morning of June

1, 1932, plaintiff's car, being driven by his wife in a northerly direction on Sixth street, was run into in the intersection by that of J. M. Gallagher, Jr., being driven by him in an easterly direction on Glenmar.

Plaintiff is a resident of Monroe, in the state of Louisiana. Defendant resides and is domiciled at Nashville, in the state of Tennessee.

In the city court of the city of Monroe, plaintiff brought this suit to recover of defendant the sum of $122.05 for the damage done to his car. The petition alleges that defendant was negligent in that he failed to respect the right of way enjoyed by Mrs. Poulan due to the fact that she entered the intersection first, and to the fact that she was traveling on a limited right of way street. That he was exceeding the speed permitted by ordinance and was not keeping a proper lookout. Defendant's car was attached on the ground of nonresidence. Personal service was made on defendant in Monroe.

Defendant filed a motion to dissolve the writ of attachment, claiming damages and attorney's fees, which was separately tried and decided adversely to him.

He made a personal appearance by answering that the accident was caused solely by the fault of plaintiff's wife in driving at an excessive speed and in the alternative that she, in so doing, was guilty of contributory negligence. He prays that his right be reserved to later proceed to recover from plaintiff for damage suffered by him because of the collision.

Defendant appeals from both the judgment maintaining the writ of attachment and that on the merits allowing plaintiff damages in the sum of $122.05, with interest and costs.

■ On the merits we adopt the finding of fact contained in the written opinion of the lower court: "The testimony of plaintiff's wife and the defendant are directly opposite, each contending to have been going at a slow rate of speed and that the other party was going at an excessive rate of speed. Plaintiff's wife also testified that defendant did not stop, slacken his speed or take any precaution before crossing North Sixth Street, while defendant contends to have slowed down and looked both north and south before proceeding to the intersection. Both drivers claim to have been the first to enter the intersection. The testimony of the above mentioned witnesses contradict each other, but Joe Gottlieb, an eye witness who saw the defendant's car at least one hundred (100) feet before it reached the intersection and saw it continually until the accident occurred, testified that defendant was driving at a rate of forty (40) miles an hour on the north side of Glenmar Street, which was the left side, and was looking to the left as if he was looking for a house number, also that he did not slacken his speed before entering the intersection. The impact, occurring in the northeast quarter of the intersection, bears out the testimony of Mr. Gottlieb that defendant was on the wrong side of the street and that the accident occurred due to the failure of defendant to use the precaution required before entering a limited right of way street."

We find further that Mrs. Poulan was not guilty of contributory negligence. The judgment on the merits is correct and should be affirmed.

The motion to dissolve presents a more troublesome proposition. Defendant being before this court through personal service and voluntary appearance, there is no question of jurisdiction. Nor is there any denial that defendant is a nonresident.

■ The fact alone of personal service would not defeat the right to the writ. The property of an absentee may be attached even though the absentee be present in the state and personally served. Were it otherwise an absentee could dissolve all attachments by making a personal appearance. Palmer v. Avalon Oil Co. et al., 10 La. App. 512, 120 So. 781; Bryans et al. v. Dunseth et al., 1 Mart. (N. S.) 412; Rayne v. Taylor & Co., 10 La. Ann. 726; De Poret v. Gusman, 30 La. Ann. 930; Allison v. Brown, 148 La. 530, 87 So. 262.

In article 240 of the Code of Practice the second ground given for the issuance of the writ of attachment is, "When such debtor resides out of the State."

■ But prior to the enactment of Act No. 215 of 1920, attachment would not issue upon an unliquidated claim for damages. That act provides: "That in all suits instituted in any of the courts of this State, in which the demand is for damages arising from an offense, quasi-offense, or tort and where the defendant, whether an individual, partnership (commercial or ordinary) or a corporation, is a non-resident of this State, or not domiciled therein, or, in the case of a corporation, not incorporated, under the laws thereof, the plaintiff shall have the right to sue out a writ of attachment against the property of the defendant, upon making affidavit and giving bond, as now required by law, in suits against non-resident defendants for other causes of action. * * *"

If the act went no further, there would be no doubt that the attachment properly issued, but it concludes with the following: " * * * Provided that the provisions of this act shall not apply in cases where the individual, partnership (commercial or ordinary) or corporation has appointed an agent in the State of Louisiana upon whom service or process may be made."

Defendant does not claim or attempt to prove that he ever actually and expressly appointed such an agent. What he does con-

tend is that under the terms of Act No. 86 of 1928, as amended by Act No. 184 of 1932, he, by operating a motor vehicle on the roads of this state, automatically and in effect voluntarily, appointed the secretary of state his attorney for the service of process, and that this appointment by operation of law is a compliance with the proviso contained in Act No. 215 of 1920, quoted above.

In other words, that the effect of the latter act is to make the former read so that a nonresident driving an automobile into this state automatically makes himself liable to attachment in case of accident and at the same time and by the same action frees himself from the danger of attachment by automatically appointing the secretary of state his agent for the service of process.

That no such absurd result was intended is clearly shown by section 3 of the Act of 1928, which is as follows: "Be it further enacted that nothing in this Act shall be construed as affecting other methods of process against non-residents as now provided by existing laws."

Defendant, in his motion to dissolve, relies upon the case of Burgin Bros. & McCane v. Barker Baking Co., 152 La. 1075, 95 So. 227, which was followed in McGovern v. United Ry. Men's Oil Ass'n, 157 La. 966, 103 So. 280, and Fullilove v. Central State Bank, 160 La. 831, 107 So. 590.

In the Burgin Bros. Case, suit was brought and attachment issued against a nonresident corporation which had complied with the provisions of section 23 of Act No. 267 of 1914, as amended by Act No. 120 of 1920, by appointing a resident agent for the service of process. This act confers upon corporations that comply with its requirements the authority to exercise " * * * the same powers, rights and privileges as are accorded to similar domestic corporations organized under this act." In the Burgin Case the court correctly held that the right of being relieved of the harassment and inconvenience of being subject to attachment was such a right and privilege intended to be granted foreign corporations complying with the act, and that therefore they are not subject to the writ of attachment issued on the sole ground of nonresidence. For this reason only the writ of attachment was properly dissolved.

Neither Act No. 215 of 1920, nor Act No. 86 of 1928, as amended, contains any provision that a nonresident operating a vehicle on the roads of this state has the powers, rights, and privileges of a resident. Therefore the decision in the Burgin Case and in the cases following it are not applicable to the facts shown in the motion before us.

■ The purpose of the writ of attachment is not to effect service of citation. Service is effected by the posting of copies of the writ and citation as provided in article 254 of the Code of Practice. Where defendant is not, by personal service, subjected to the jurisdiction of the court, the proceeding is necessarily in rem, and the judgment rendered, though for the full amount claimed, affects only the property within the jurisdiction. Where personal service is obtained on a nonresident, the judgment is personal for its full amount. There are other grounds for attachment than of nonresidence. On whatever ground it issues, the main purpose of the attachment is to hold the property seized so that it may be subjected to whatever judgment is rendered in the case. It is a conservatory writ incident to the main action. Favrot v. Delle Piane, 4 La. Ann. 586; Marqueze & Co. v. Le Blane, 29 La. Ann. 205; Williams v. Kimball, 8 Mart. (N. S.) 353.

■ In the absence of statutory enactments to the contrary, we do not think the right to the issuance of a writ of attachment is dependent upon methods of citation.

We think the judgment of the lower court is correct on both issues. It is accordingly affirmed.