A. L. KORNMAN COMPANY, Appellant,

v.

AMALGAMATED CLOTHING WORK-
ERS OF AMERICA, Appellee.

No. 13523.

United States Court of Appeals
Sixth Circuit.

Feb. 25, 1959.

Cecil Sims, Nashville, Tenn., Lewis D. Pride, Nashville, Tenn., on brief, for appellant.

William J. Isaacson, New York City, R. H. Brazzell, Nashville, Tenn., Szold, Brandwen, Meyers & Blumberg, New York City, on brief, for appellee.

Before MARTIN and MILLER, Circuit Judges, and GOURLEY, District Judge.

MARTIN, Circuit Judge.

In this action, the appellee, Amalgamated Clothing Workers of America, sought to recover from the appellant, A. L. Kornman Company, a judgment for $10,104.63, being the amount of an arbitration award rendered in favor of the appellee union by an arbitrator appointed pursuant to provisions of a collective bargaining agreement between appellant and appellee. The award was based upon provisions of the collective bargaining agreement pertaining to vacation pay accruing to numerous union members who were employees of the company. The appellant company had joined in the submission of the dispute to the arbitrator, but refused to abide the decision and award made by him.

Amalgamated Clothing Workers of America represents as collective bargaining agent numerous workers in the men's clothing and related industries throughout the United States. The A. L. Kornman Company was a Tennessee corporation engaged in the manufacture of men's clothing at its factory in Nashville, Tennessee, until its liquidation which took place prior to May 1, 1954. On February 19, 1954, the union and the company had entered into a collective bargaining agreement for a term ending June 1, 1957. This agreement and its supplements provided, *inter alia,* for the terms and conditions of employment of the company's employees, including a provision for vacation and vacation pay. Article XIX of the collective-bargaining agreement, captioned "Grievances and Arbitration Procedure", set forth the initial procedure to be followed in the event of any complaint, grievance, or dispute, arising out of provisions of the agreement. The following language was inserted: "Should the parties be unable to adjust the grievance themselves, the matter shall be referred for arbitration and final determination to Walter Brower, Esq., who is hereby designated as Arbitrator for the duration of this Agreement, or until his successor is named. The decision, order, direction, or award of the Arbitrator shall be final, conclusive and binding and enforceable in a court of competent jurisdiction."

In August of 1954, the union notified the company that it had not yet paid the employees any vacation pay for 1954 as required by the collective bargaining agreement. The company replied in writing that it would not recognize lia-

bility for, or pay, any vacation pay to its employees. In December of that year, after due notice, a hearing was held before the arbitrator. Both the union and the company were represented by counsel at the hearing; and the respective attorneys joined in submitting to the arbitrator the question of the company's liability for vacation pay to its employees for the year 1954. The attorneys at the hearing presented evidence and oral arguments, with briefs in support of their positions.

A supplemental collective bargaining agreement dated February 5, 1954, had been entered into between the union and the company. This agreement was in the form of a letter from the union to the company in which it was stated that certain sections of the main agreement would not be effective until May 1, 1954. The letter was marked "accepted" by the President of Kornman Company. The accepted agreement referred to Article IV (Wages); Article V (Hours of Work); Article X (Payment of Wages and Check-off); and Article XI (Insurance); but no mention was made of the section concerning vacation pay which was incorporated in the main agreement. Questions raised by the company as to whether or not the employees' rights to vacation pay were terminated if the company liquidated prior to May 1, 1954, were fully presented to the arbitrator and resolved by him adversely to the company.

In March, 1955, the Kornman Company notified the union, in writing, that it would refuse to abide by the arbitrator's award. Whereupon, in December of that year, the union instituted this action in the United States District Court. The conclusions of law of District Judge Miller clearly indicated his opinion to be that jurisdiction for the action to enforce the award was conferred upon the court by section 301 of the Labor-Management Relations Act of 1947 (61 Stat. 156, 29 U.S.C.A. § 185). The judge concluded further that the award had been rendered properly, pursuant to the authority conferred upon the arbitrator by the collective bargaining agreement and by stiplation of the parties in submitting the issue to him; that issues raised before the arbitrator could not be redetermined by the court; that the company's refusal to abide by the award was a violation of the terms of the bargaining agreement; and that, inasmuch as the district court had jurisdiction to enforce the award and there was no dispute as to any material fact, the union was entitled to a judgment enforcing the award.

The position of the appellant company is that jurisdiction of the United States District Court cannot be invoked by the union for the purpose of enforcing an arbitration award under section 301 of the 1947 Act (61 Stat. 156, 29 U.S.C.A. § 185), for the reason that the basis of the award rests upon individual claims of employees and not upon the collective claim of the union.

The Supreme Court held in Association of Westinghouse Salaried Employees v. Westinghouse Corp., 1955, 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510, that section 301 of the Labor-Management Relations Act does not authorize a suit by a union seeking a judgment in favor of individual employees for unpaid wages. Our court held, in Local 19, Warehouse, Processing and Distributive Workers Union, Retail, Wholesale and Department Store Union v. Buckeye Cotton Oil Co., 6 Cir., 236 F.2d 776, that the Westinghouse case was not controlling in an action brought to enforce arbitration provisions of a collective bargaining agreement, but that section 301 (Labor-Management Relations Act) and the United States Arbitration Act (9 U.S.C.A. § 1 et seq.) authorize an injunction for enforcement of an agreement to arbitrate. Judge Allen, writing for this court, pointed out at pages 779 and 781 of the opinion the distinction between Westinghouse and such an action: "As to the application of the Westinghouse case, while the complaint herein originally involved payment of wages, the arbitration is sought under a collective bargaining contract in which provisions establishing the arbi-

tration * * * constitute an important feature, and are made applicable to many issues other than those of wages or hours. A grievance as defined above thus covers problems not involved in the Westinghouse decision. There the controversy related only to the payment of back wages. The enforcement of an arbitration agreement was not sought and the question of arbitration was not raised. The right set up was individual to the employee. * * * The complaint here seeks relief broader than and distinct from money judgment. This is an action to compel the use of a negotiating device voluntarily agreed upon between management and labor and extensively used. * * * While the Supreme Court in the Westinghouse case construed Section 301, it construed it solely with reference to a suit for payment of wages. It did not declare the meaning of the term 'suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * *.' § 301. In absence of such a construction by the Supreme Court we adhere to the decision by this court in Milk & Ice Cream Drivers and Dairy Employees Union Local No. 98 v. Gillespie Milk Products Corporation, 6 Cir., 203 F.2d 650. We there held, quoting Section 301, that the unqualified use of the word 'suits' in the Labor Management Relations Act authorized an injunction for the full enforcement of the substantive rights therein created. We applied this section to an arbitration controversy and held that an injunction should issue to prohibit the employer from refusing to give effect to the decision and award of a duly constituted arbitrator. '* * *.''

Following that decision by our court, the Supreme Court decided Textile Workers Union of America v. Lincoln Mills of Alabama, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, as well as two companion cases (General Electric Co. v. Local 205, United Electrical, Radio and Machine Workers of America, 1957, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed. 2d 1028, and Goodall-Sanford, Inc. v. United Textile Workers of America, A.F.L., Local 1802, 1957, 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031); and later denied certiorari in Local 19, etc., v. Buckeye Cotton Oil Co., supra 1957, 354 U.S. 910, 77 S.Ct. 1293, 1 L.Ed.2d 1428.

In his opinion in Textile Workers Union of America v. Lincoln Mills of Alabama, supra, Justice Douglas made the following comment concerning section 301 (353 U.S. 455, 456, 77 S.Ct. 917): "Plainly the agreement to arbitrate grievance disputes is the *quid pro quo* for an agreement not to strike. Viewed in this light, the legislation does more than confer jurisdiction in the federal courts over labor organizations. It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained in that way. * * * The question then is, what is the substantive law to be applied in suits under § 301 (a)? We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws."

The Justice concluded further (as did Judge Allen in the Local 19 etc. v. Buckeye case) that the Norris-LaGuardia Act did not withdraw jurisdiction to compel arbitration by injunction, the opinion stating, 353 U.S. at page 458, 77 S.Ct. at page 918: "* * * The failure to arbitrate was not a part and parcel of the abuses against which the Act was aimed. * * *."

In a concurring opinion, Mr. Justice Burton had the following to say about the jurisdiction granted by section 301 (353 U.S. 460, 77 S.Ct. at page 919): "* * * Having jurisdiction over the suit, the court was not powerless to fashion an appropriate federal remedy. The power to decree specific performance of a collectively bargained agreement to arbitrate finds its source in § 301 itself, and in a Federal District Court's inherent equitable powers, nurtured by a congressional policy to encourage and en-

force labor arbitration in industries affecting commerce."

The present case goes one step further than did the Textile Workers Union of America v. Lincoln Mills case, supra. Here, the arbitration has been completed, an award has been granted in favor of the union; and the union now seeks enforcement of that award by means of a suit in its behalf for a money judgment in an amount identical with that of the award. The company contends that this means of enforcement is prohibited by the Westinghouse case, supra, and that the sole means of redress is for each employee to institute a separate action in a state court for his, or her, portion of the award.

We are not in accord with that argument. If the United States District Courts have jurisdiction and may order compliance with the grievance arbitration provisions of a collective bargaining agreement, they must necessarily have jurisdiction to enforce the resulting awards. To hold otherwise would render the entire arbitration machinery merely time-consuming and useless. Authority to compel arbitration carries with it authority to enforce the resulting award.

SHACKELFORD MILLER, Jr., Circuit Judge (dissenting).

I am of the opinion that the District Court did not have jurisdiction of this case, and accordingly, the judgment should be reversed.

The present action is purely one to enforce an arbitration award for the benefit of individual employees. A complete and adequate remedy is provided by the state courts. Diversity of citizenship does not exist.

Sec. 301(a) of the Labor Management Relations Act of 1947, Sec. 185(a), Title 29 U.S.C.A., under which federal jurisdiction is claimed, does not in my opinion confer such jurisdiction.

Sec. 301(a) is expressly limited to suits for "violation of contracts between an employer and a *labor organization.*" (Emphasis added.) If any contract has been breached in this case, it is not the collective bargaining contract between the appellant and the Union. That contract required the appellant to arbitrate a grievance, which obligation was complied with without court action. The obligations which this action seeks to enforce arise out of the breach by the appellant of the separate, individual contracts of employment between the appellant and the individual employees. J. I. Case Co. v. N. L. R. B., 321 U.S. 332, 334–336, 64 S.Ct. 576, 88 L.Ed. 762. Such contracts are not included in the provisions of Sec. 301(a). In my opinion this case is controlled by the ruling of the Supreme Court in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510, in which it was held that the District Court did not have jurisdiction of an action by a labor organization to recover from an employer unpaid wages in favor of individual employees, alleged to be owing by reason of the provisions of the collective bargaining agreement between the employer and the Union. In this case, as in that case, although the relief sought stems from the collective bargaining agreement, the specific claim arises out of the employer's refusal to pay to individual employees the compensation which he is required to pay by reason of the separate contract of employment between the employer and the individual employee.

The majority opinion relies upon Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972. That case does not cover the situation here. It held that the District Court had jurisdiction under Sec. 301(a) of a suit by a labor organization to require the employer to arbitrate a grievance, as its *collective bargaining contract with the Union* required it to do. It enforced the contract between the employer and the Union, which Sec. 301 (a) specifically refers to. It did not deal

with the collection of unpaid compensation claimed under *the individual contracts of employment* with the individual employees, which the Court dealt with in the Westinghouse case and which are involved in this case. The present action is not to compel the employer to arbitrate a grievance.

The majority opinion gives the District Court additional jurisdiction which is not provided for by the words of the statute. It may be, as stated in the majority opinion, that if the District Court has jurisdiction to compel arbitration, it is advisable that it also have jurisdiction to enforce the resulting arbitration award. It seems to me there are two answers to that contention.

First, the available jurisdiction under Sec. 301(a) was not invoked or used in this case to obtain the arbitration and the resulting award. The enforcement of the award is not a follow-up or continuing exercise of a jurisdiction previously acquired. It is a new and independent action.

Second, regardless of how advisable it may be, the statute does not provide it. The jurisdiction of federal district courts is limited and defined strictly by statute. United States ex rel. State of Wisconsin v. First Federal Savings and Loan Association, 7 Cir., 248 F.2d 804, 808; Fisch v. General Motors Corp., 6 Cir., 169 F. 2d 266, 272, certiorari denied 335 U.S. 902, 69 S.Ct. 405, 93 L.Ed. 436. It is limited to that which is either expressly or by necessary implication conferred on them by the statute granting such jurisdiction. Trust Co. of Chicago v. Pennsylvania R. Co., 7 Cir., 183 F.2d 640, 642, 21 A.L.R.2d 238; Badger v. Reich Bros. Const. Co., 5 Cir., 161 F.2d 289, 290, affirmed 333 U.S. 163, 68 S.Ct. 587, 92 L.Ed. 614, rehearing denied 333 U.S. 878, 68 S.Ct. 900, 92 L.Ed. 1153. It is carefully guarded against expansion by judicial interpretation. American Fire & Casualty Co. v. Finn, 341 U.S. 6, 17, 71 S.Ct. 534, 95 L.Ed. 702. If the jurisdiction should be enlarged, Congress can easily do so.